```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| LOURDES SPECIALTY HOSPITAL OF SOUTHERN NEW JERSEY, on assignment of Timothy W., | No. 1:17-cv-11527 (NLH/KMW) |
| Plaintiff, | OPINION |
| v. | |
| H.D. SUPPLY, INC. HEALTH AND WELFARE PROGRAM, | |
| Defendant. | |

**APPEARANCES**:

MICHAEL J. SMIKUN
MICHAEL GOTTLIEB
CALLAGY LAW, PC
650 FROM ROAD
SUITE 565
PARAMUS, NJ 07652
    On behalf of Plaintiff

JAMES P. ANELLI
DANITA C. MINNIGAN
LECLAIRRYAN
ONE RIVERFRONT PLAZA
1037 RAYMOND BOULEVARD
16TH FLOOR
NEWARK, NJ 07102
    On behalf of Defendant

**HILLMAN, District Judge**

This is an ERISA suit concerning Defendant H.D. Supply, Inc. Health and Welfare Program's alleged failure to properly reimburse Plaintiff Lourdes Specialty Hospital of Southern New Jersey for medical services provided by Plaintiff. Before the

Court is Defendant's Motion to Dismiss. For the reasons that follow, Defendant's motion will be granted.

## I.

The Court takes its facts from Plaintiff's November 10, 2017 Complaint. Timothy W. ("Patient") underwent treatment in Plaintiff's long-term acute care facility. Patient has an insurance plan with Defendant. A representative of Defendant verified Patient's insurance with Plaintiff. Plaintiff obtained an assignment of benefits from Patient, which Plaintiff alleges enables it to bring this ERISA claim. Pursuant to this assignment, Plaintiff submitted a Health Insurance Claim Form in connection with Patient's treatment.

Patient's first stay at the facility took place from September 15, 2014 through October 27, 2014. Patient's second stay took place from March 19, 2015 to May 29, 2015. Patient's first stay was divided into three separate billing cycles; Patient's second stay was divided into four billing cycles. Plaintiff's total charges for the first billing cycle of Patient's first stay were $169,160.50. Defendant issued payment in the amount of $123,031.81. Plaintiff pleads Defendant's payment for Patient's first cycle of treatment "is consistent with the rates promised during the insurance verification process."

Plaintiff pleads that for the subsequent billing cycles, "Defendant reimbursed Plaintiff substantially less than what was promised during the insurance verification process and a substantially lower percentage of usual and customary charges than what was remitted for the first billing cycle." For instance, Plaintiff's charges for the second billing cycle of Patient's first stay were $178,541.29, but Defendant paid $22,797.83. As to the first billing cycle of Patient's second stay, Plaintiff's charges were $188,432.05, but Defendant paid $22,589.32. As to the second billing cycle of Patient's second stay, Plaintiff's total charges were $184,079.32, but Defendant paid $26,717.13. As to the third billing cycle of Patient's second stay, Plaintiff's total charges were $184,832.89, but Defendant paid $13,220.09. As to the fourth billing cycle of Patient's second stay, Plaintiff's charges were $324,962.93, but Defendant paid $36,652.08.

While Plaintiff submitted appeals, Defendant did not remit any additional payments. Plaintiff pleads Defendant's reimbursement amounts to an underpayment of $1,110,106.20 based on the terms of the insurance plan.

Plaintiff's November 10, 2017 Complaint asserts two claims: (1) failure to make all payments under 29 U.S.C. § 1132(a)(1)(B) and (2) breach of fiduciary duty and co-fiduciary duty under 29

U.S.C. §§ 1132(a)(3), 1104(a)(1), and 1105(a). Defendant filed a Motion to Dismiss on January 22, 2018.

**II.**

This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

**III.**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.,

4

40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (alterations in original) (citations omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before Twombly."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its

face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570).

**IV.**

The Court will grant Defendant's Motion to Dismiss based on the plan having a clear and unambiguous anti-assignment clause regarding assignment of the right to sue. The plan provides, in pertinent part, as follows:

> Benefits for medical expenses covered under this Plan may be assigned by a member to the provider as consideration in full for services rendered; however, if those benefits are paid directly to the associate, the Plan shall be deemed to have fulfilled its obligations with respect to such benefits. The Plan will not be responsible for determining whether any such assignment is valid. Payment of benefits which have been assigned will be made directly to the assignee unless a written request not to honor the assignment, signed by the member and the assignee, has been received before the proof of loss is submitted.
>
> No member shall at any time, either during the time in which he or she is a member in the Plan, or following his or her termination as a member, in any manner, have any right to assign his or her right to sue to recover benefits under the Plan, to enforce rights due under the Plan or to any other causes of action which he or she may have against the Plan or its fiduciaries.
>
> A provider which accepts an assignment of benefits, in accordance with this Plan as consideration in full for services rendered, is bound by the rules and provisions set forth within the terms of this document.

(emphasis added).

The plan language is clear and unambiguous in prohibiting an assignment of the right to sue to recover benefits. In May 2018, the Third Circuit concluded that "anti-assignment clauses

6

in ERISA-governed health insurance plans as a general matter are enforceable." Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield, 890 F.3d 445, 453 (3d Cir. 2018). Courts in the District have held that this is true even when enforced against a healthcare provider. Id.; see also Univ. Spine Ctr. v. Horizon Blue Cross Blue Shield of N.J., No. 16-8253, 2017 WL 3610486, at *2 n.3 (D.N.J. Aug. 22, 2017) ("[A]n anti-assignment clause can be enforced against the provider of the services that the Plan is maintained to furnish."); Univ. Spine Ctr. v. Aetna Inc., No. 17-8160, 2018 WL 1409796, at *5 n.6 (D.N.J. Mar. 20, 2018).

Plaintiff, however, relies on the language allowing an assignment of benefits to a medical provider as consideration for the medical services, arguing that "implicit in the right to receive payment is the right to file suit for non-payment." Plaintiff relies on North Jersey Brain & Spine Center v. Aetna, Inc., 801 F.3d 369 (3d Cir. 2015) in opposition to Defendant's motion. In that case, the Third Circuit held that, "as a matter of federal common law, when a patient assigns payment of insurance benefits to a healthcare provider, that provider gains standing to sue for that payment under ERISA § 502(a)." Id. at 372. It concluded that "[a]n assignment of the right to payment logically entails the right to sue for non-payment." Id. However, the Third Circuit explained the precise issue it was

7

considering when making that statement: "whether a patient's explicit assignment of payment of insurance benefits to her healthcare provider, without direct reference to the right to file suit, is sufficient to give the provider standing to sue for those benefits under ERISA § 502(a)." Id. at 370.

The Third Circuit addressed its 2015 decision in American Orthopedic & Sports Medicine, in which it recognized its holding to be "that a valid assignment of benefits by a plan participant or beneficiary transfers to such a provider both the insured's right to payment under a plan and his right to sue for that payment." 890 F.3d at 450. The Third Circuit also reiterated the narrowness of that holding:

> [I]n NJBSC we merely held – in the absence of an anti-assignment clause – that "when a patient assigns payment of insurance benefits to a healthcare provider, [the] provider gains standing to sue for that payment." We had no occasion to address the effect or enforceability of an anti-assignment clause . . . .

Id. (second alteration in original) (citation omitted) (quoting N. Jersey Brain & Spine Ctr., 801 F.3d at 372). Accordingly, the limited holding of this 2015 decision related to when an assignment referenced only the right to benefits and not the right to sue. Simply put, North Jersey Brain & Spine Center did not address the precise issue before the Court in this case.

The Court recognizes the general proposition that the right to sue follows an assignment of the right to benefits. However,

8

the Court is faced here with an assignment of the right to benefits coupled with a clear and unambiguous anti-assignment clause regarding the right to sue.  The Court finds these two provisions, dealing with two distinct rights, to be compatible.  Plaintiff has cited no authority to the contrary.  Finding the anti-assignment clause clear and unambiguous, the Court finds the clause enforceable here.

The Court further rejects Plaintiff's argument that the anti-assignment clause was waived through a course of dealing.  Plaintiff specifically pinpoints the following as purportedly evidencing a waiver of the anti-assignment clause:

> Defendant verified Patient's insurance coverage and Plaintiff proceeded to treat Patient.  Plaintiff then submitted its medical bills directly to Defendant, which were accompanied by the assignment of benefits.  Defendant, in turn, issued partial payment directly to Plaintiff.  Plaintiff then directly engaged with Defendant through the completion of Defendant's internal appeals process.

(citations omitted).

"[I]t is now well-settled law in the District of New Jersey that the Plan did not waive the Anti-Assignment Clause by dealing directly with the Medical Provider in the claim review process, or by directly remitting payment to the Medical Provider." Emami v. Quinteles IMS, No. 17-3069, 2017 WL 4220329, at *3 (D.N.J. Sept. 21, 2017) (motion to dismiss); accord Univ. Spine Ctr. v. Aetna, Inc., No. 17-8161, 2018 U.S.

Dist. LEXIS 92578, at *13 (D.N.J. May 31, 2018) (finding on a motion to dismiss that payment of part of the plaintiff's claim and engagement in the appeals process is "insufficient to establish waiver"); IGEA Brain & Spine, P.A. v. Blue Cross & Blue Shield of Minn., No. 16-5844, 2017 WL 1968387, at *3 (D.N.J. May 12, 2017) (finding on a motion to dismiss that the plaintiff's preparing of a health insurance claim form demanding reimbursement for services and the plaintiff's engagement in the administrative appeals process with the defendant was "insufficient to constitute a waiver" and stating that "[s]imply engaging in a claim review process with Plaintiff does not demonstrate a 'clear and decisive act' to waive the Plan's anti-assignment provisions and confer upon Plaintiff standing").

Indeed, the Third Circuit's recent opinion, while considering a claim under Pennsylvania law, held the same in considering whether an anti-assignment provision was waived by processing a claim form and issuing a check to the appellant. See Am. Orthopedic, 890 F.3d at 454 (citing case law from the District of New Jersey and concluding that "routine processing of a claim form, issuing payment at the out-of-network rate, and summarily denying the informal appeal do not demonstrate 'an evident purpose to surrender' an objection to a provider's standing in a federal lawsuit"). While Plaintiff argues its waiver argument warrants the need for discovery it is unclear

10

what additional facts would be known only to Defendant or to third parties.  Plaintiff's waiver argument centers on Defendant's course of dealing <u>with Plaintiff</u>, facts readily available to Plaintiff at the pleading stage.  Assuming all of the Complaint's factual allegations to be true, such actions by Defendant toward Plaintiff would not constitute a waiver of the anti-assignment clause.

    The Court will grant Defendant's Motion to Dismiss.  An appropriate Order will be entered.


Date: __August 10, 2018__       _s/ Noel L. Hillman_  
At Camden, New Jersey      NOEL L. HILLMAN, U.S.D.J.